# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAROL MARIN, PHILIP ROGERS, ALISON FLOWERS, ROBIN AMER, LINDSEY DORCUS, YOHANCE LACOUR, and VICTORIA NASSIF, each individually and on behalf of all others similarly situated, | ) | Case No. 1:26-cv-05436 |
| Plaintiffs, | ) | Hon. April M. Perry |
| v. | ) | |
| ALPHABET, INC., a Delaware corporation, and GOOGLE LLC, a Delaware limited liability company, | ) | |
| Defendants. | ) | |

**PLAINTIFFS' SUR-REPLY IN FURTHER OPPOSITION TO GOOGLE'S MOTION TO DISMISS THE COMPLAINT**

Google's reply (Dkt. 32 ("Reply")) raises three kinds of matter for the first time, and Plaintiffs address only those: a new exhibit offered against Count IV, which makes its disclosure allegations more plausible, not less (Section I); new grounds for dismissing Counts VII and VIII (Sections II–III); and arguments resting on an altered quotation of Dkt. 1 ¶ 56, misdescriptions of *Sinatra* and *Lynch Ford*, and misreadings of the Complaint and the Opposition (Sections III–V). Plaintiffs otherwise stand on the Opposition (Dkt. 31).

## I. Google's New Exhibit Answers an Allegation the Complaint Does Not Make

Google offers Exhibit D for the first time on reply, arguing that Count IV fails because its Cloud Data Processing Addendum "applies only to 'Customer Data.'" (Dkt. 32 at 8; Dkt. 32-1 ¶ 3.) That answers an allegation the Complaint does not make. Paragraph 73 does not allege that the Addendum governs Plaintiffs' biometric data. It describes the Addendum as the framework under which Google processes data "for Google Cloud customers," alleges that Google's voice pipeline "operates within that sub-processor framework," and alleges that operating the pipeline involves transmitting model parameters, and, on information and belief, the voiceprints encoded in them, among Google's "affiliated entities, vendors, and service providers." (Dkt. 1 ¶ 73.) Nothing in Exhibit D controverts that allegation.

Exhibit D confirms the framework. Google engages third-party "Subprocessors" to "provide parts of the Services," and Customer Data "may be processed in any country where Google or its Subprocessors maintain facilities." (Dkt. 32-2 at 5, 14.) Customer Data includes what customers "derive from that data through their use of Google Cloud Platform" (*id.* at 32), which for a voice customer includes the audio the models generate. Because third parties process the data flowing into and out of the models, the models, the voiceprints, and the biometric information derived from them plausibly reach those third parties too. Google identifies no

mechanism, in the Addendum or anywhere else, that keeps the models apart from the infrastructure its Subprocessors use.

Nor does the Addendum touch paragraphs 74 and 75. They allege that the models are served on infrastructure "operated by, or on behalf of, Google through multiple Alphabet subsidiaries and contracted service providers," that serving them "necessarily involves transmitting model parameters over that infrastructure," and that the models are transferred among Alphabet entities. (Dkt. 1 ¶¶ 74–75.) That is not the bare "may have" allegation rejected in *Horn v. Method Prods., PBC*, 2022 WL 1090887, at *3 (N.D. Ill. Apr. 12, 2022). It is the kind of architecture *Heard* found sufficient without recipient names. *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 843 (N.D. Ill. 2021).

## II. Google's New Attack on Count VII Comes Too Late, and the Complaint Answers It

The Motion's only argument against Count VII's unfairness theory was derivative: it rises and falls with the biometric-collection allegations. (Dkt. 27-1 at 20.) The Reply adds three arguments the Motion never made: that Count VII fails the *Robinson* factors, pleads competitor rather than consumer injury, and pleads no actual pecuniary loss. (Dkt. 32 at 10–11.) Those new arguments are waived, *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009), and each misreads the Complaint, beginning with the paragraph the Reply quotes.

The Reply says paragraph 206 "addresses only purported injury," not oppressiveness. (Dkt. 32 at 11.) Its second sentence addresses choice: Plaintiffs "could not reasonably have avoided this injury because they had no knowledge that Google was collecting their biometric data." (Dkt. 1 ¶ 206.) Oppressiveness turns on choice. *Robinson* rejected that factor because the lessees there did "not even assert that they lacked reasonable alternatives in the marketplace."

*Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 420 (2002). Plaintiffs had no alternative to a collection they did not know about. And "[a]ll three criteria do not need to be satisfied." *Id.* at 418. Conduct that violates the policy the General Assembly declared in BIPA meets the public-policy factor to a high degree. (Dkt. 1 ¶ 205.)

Nor are Plaintiffs' losses competitor injuries. In *Speakers of Sport*, a sports agency sued a rival that had lured away its client with a promise of endorsements. The promise was puffing, so the client "was not wronged," and the agency could not "complain that ProServ competed with it unfairly." *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999). Its claim sought "damages from a competitor when no consumer has been hurt." *Id.* at 868. Plaintiffs are not bystanders to a practice aimed at someone else. Google took their biometric identifiers, and the first injury Count VII pleads is the direct cost of that taking: "the diversion of licensing income they would otherwise have earned for the use of their voices" (Dkt. 1 ¶ 206), the fee Google never paid for the input it took. The person the practice injured is the plaintiff, and the ICFA's private right runs to "[a]ny person who suffers actual damage." 815 ILCS 505/10a(a).

And pecuniary loss is pleaded. The Reply says the Complaint identifies "no rate that fell, no engagement or income lost, and no customer who chose a Google product over a Plaintiff." (Dkt. 32 at 11.) Audiobook narration is one example. The Complaint pleads the rate ($250 to $400 per finished hour), the substitute (Google voice products licensed to audiobook publishers at fees "orders of magnitude lower"), and the buyers: Penguin Random House, Hachette, Simon & Schuster, and Macmillan, for whom Dorcus and Nassif have narrated and which "have begun to integrate AI-generated narration." (Dkt. 1 ¶¶ 109, 116.) It pleads the same substitution in long-form investigative audio, where NotebookLM's Audio Overviews, used by more than two million people, "directly substitutes" for the work of Lacour, Flowers, and Amer (*id.* ¶¶ 89, 94,

99, 117), and pleads Google's entry into the broadcast markets where Marin and Rogers work (*id.* ¶¶ 83, 104). Rule 8 governs the claim, *Kahn v. Walmart Inc.*, 107 F.4th 585, 601–03 (7th Cir. 2024), and does not require Plaintiffs to identify, before discovery, which engagements went to Google's products. That information is in Google's sales records and its customers' files.[1]

## III. Neither *Lynch Ford* Nor the Standing Argument Defeats Count VIII

The Reply's lead argument against Count VIII is a categorical rule: UDTPA Section 2 "reaches only conduct where there is 'some form of a representation . . . to the public . . . regarding a good or service,' not a failure to disclose." (Dkt. 32 at 12.) Its only authority is *Lynch Ford*, and the rule depends on what the ellipses remove. The sentence reads: the defendant "must make some form of a representation *(or do something)* to the public (or a potential buyer) regarding a good or service." *Lynch Ford, Inc. v. Ford Motor Co.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997) (emphasis added). The omitted words make conduct enough. The representation-only rule comes from the ellipses, not the case.

*Lynch Ford* rejected a bare nondisclosure theory involving no identifiable good: the dealer complained that Ford hid its ownership of competing dealerships. *Id.* at 146–47. Count VIII pleads conduct concerning identifiable goods: Google's products generate outputs that "sound like real human speakers," including outputs that "replicate or closely simulate the distinctive vocal characteristics of Plaintiffs," and those outputs circulate without disclosure. (Dkt. 1 ¶ 214.) An output that sounds like a real person, with no indication that it is not one, is the "misleading trade identification" the statute was designed to reach. *Lynch Ford*, 957 F. Supp. at 147 (citation omitted). The missing label is what makes it confusing, and a label is the remedy

[1] As the Reply describes them, *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 706 (N.D. Ill. 2012), rejected a bare allegation of "lost money and property," and *Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 850 (N.D. Ill. 2024), held that collecting and selling personal data is not pecuniary loss. (Dkt. 32 at 11.) Plaintiffs rely on lost income in named markets, not loss of control over their data.

sought. (Dkt. 1 ¶¶ 214, 216.)

The Reply also argues, for the first time, that Count VIII lacks an "imminent risk of a concrete injury." (Dkt. 32 at 12.) Its authorities are Article III decisions.[2] Because standing is jurisdictional, Plaintiffs answer the argument rather than rest on waiver. And if Google were right, the result would be dismissal without prejudice, not with prejudice. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019).

Google is not right. *Lauer* and *Kahn* involved purchasers whose only injury was their own deception; once they knew the truth, no future harm remained. *Kahn*, 107 F.4th at 606. Plaintiffs' injury does not depend on whether they were deceived. It is ongoing, and unlike the guesswork about government surveillance in *Clapper*, 568 U.S. at 410–14, it begins with Google's conduct: Google sells these products in Illinois "on a continuing basis," and its conduct "diverts demand from licensed human voice performances and impairs source attribution" in the markets where Plaintiffs work. (Dkt. 1 ¶¶ 77, 215.) Those are the "continuing, present adverse effects" that support injunctive relief. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

## IV. Read Accurately, the Complaint and *Midler* Defeat Both Reply Preemption Theories

The Reply's conflict-preemption argument rests on one citation to the Complaint. To show a "veto over the owner's right to license the recording," the Reply quotes paragraph 56 as alleging that "a YouTube uploader cannot license [their videos] to Google." (Dkt. 32 at 13.) Paragraph 56 says: "The legal rights protected by BIPA and IRPA are personal to the speaker, not to the entity that recorded the speaker's voice; a YouTube uploader cannot license to Google rights the uploader does not possess." (Dkt. 1 ¶ 56.) The brackets Google's Reply added replace the allegation's object, turning the speaker's personal rights into the uploader's videos.

---

[2] *Lauer v. John Paul Mitchell Systems*, 2025 WL 3485172, at *3–4 (N.D. Ill. Dec. 4, 2025) (holding that "Article III bars" the plaintiff's injunctive claim); *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013).

Read as written, paragraph 56 claims no veto; Plaintiffs claim no right to license, withhold, or control any recording. (Dkt. 31 at 16–17.) What remains is that a licensee must also comply with laws protecting the person recorded, which *Midler*, the Reply's own authority, accepts: Young & Rubicam "had a license from the copyright holder to use the song," and Midler's claim to her voice went forward anyway. *Midler v. Ford Motor Co.*, 849 F.2d 460, 461–63 (9th Cir. 1988); *accord Toney v. L'Oréal USA, Inc.*, 406 F.3d 905, 910–11 (7th Cir. 2005). Two permissions from two rights-holders is not "anarchy." (Dkt. 32 at 13.)

The express-preemption theory rests on a misdescription of *Sinatra*, which the Reply calls a suit against "a defendant who used a recording of her voice with the copyright owner's consent but not hers." (Dkt. 32 at 14.) The commercials used singers "alleged to have imitated her voice and style," and she claimed a secondary meaning in the song. *Midler*, 849 F.2d at 462. Because both cases involved sound-alikes, the line between them is not whether the defendant used a recording. It is what the plaintiff claimed: "If Midler were claiming a secondary meaning to 'Do You Want To Dance' or seeking to prevent the defendants from using that song, she would fail like Sinatra. But that is not this case." *Id.* Plaintiffs claim their voices, not any recording or song. That is *Midler's* side of the line.

*Dent* draws the same line. In the case the Reply cites, the court later held the plaintiffs' Right of Publicity Act claim not preempted because the use of their identities "extends beyond the copyrighted work." *Dent v. Renaissance Mktg. Corp.*, 2015 WL 3484464, at *4 (N.D. Ill. June 1, 2015). So does the use alleged here. The Reply reads paragraph 195 as "an objection to the use of copyrighted recordings" (Dkt. 32 at 14), but the paragraph alleges that Google used Plaintiffs' identities "by extracting and modeling the distinctive vocal characteristics embodied in their recordings and using those characteristics to develop, train, and operate the voice

synthesis products that Google monetizes." (Dkt. 1 ¶ 195.)

## V. The Reply's First Amendment Argument Rests on Misreadings of the Record

The Reply's First Amendment argument rests on two premises attributed to Plaintiffs: that they "accept" the models, their outputs, and "the activities they enable" as protected, and that they do not dispute claims targeting protected activity "are barred." (Dkt. 32 at 15–16.) The Opposition conceded neither. It assumed, "solely for this motion," only that voice models "may be expressive tools" and "particular outputs may be protected speech" (Dkt. 31 at 22 & n.6), and argued that Section 15(b) "would survive intermediate scrutiny even if speech were implicated" (*id.* at 22–23). Without those premises, the Reply's conclusion that "dismissal is required" (Dkt. 32 at 16) fails. Google must show the liability-triggering act is itself protected expression.

The Reply says the Opposition "misrepresent[s]" *Angelilli* by omitting its holding that the First Amendment protects "the dissemination of tools," so that Roblox could not be held liable "for offering game creation tools." (Dkt. 32 at 17 (quoting 781 F. Supp. 3d at 701).) The Opposition's reading is the Court's own: "At its core, what Plaintiffs complain of is the words and images that appeared on D.G.'s various gaming devices, and the effect that Plaintiffs believe those words and images had on D.G.'s brain and behavior." *Angelilli v. Activision Blizzard, Inc.*, 781 F. Supp. 3d 691, 701–02 (N.D. Ill. 2025). The tool holding fits that reading: the plaintiffs sought to hold Roblox liable for offering tools whose output, they alleged, was addictive. Counts I through V do not seek to hold Google liable for offering voice models or for what they produce. They challenge how Google obtained what went into the models, and they can be proven "without introducing any output." (Dkt. 31 at 24.) Extracting another person's biometric identifier is not an act of creation; it is the acquisition of regulated personal information. A restriction on that acquisition is "a limitation only on access to information," which inflicts no

cognizable First Amendment injury even when the acquirer means to publish. *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 947–48 (7th Cir. 2015); *see Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 876–8] (N.D. Ill. 2022) (applying *Dahlstrom* to BIPA's consent requirement); Dkt. 31 at 22–23. The remaining counts are addressed below.

The Reply's effort to distinguish *Clearview* rests on a misstatement of the Complaint. The Reply says *In re Clearview AI, Inc., Consumer Privacy Litigation*, 585 F. Supp. 3d 1111 (N.D. Ill. 2022), does not apply because the models generate voices "that Plaintiffs do not allege sound like them," a distinction it says "decides each case." (Dkt. 32 at 18.) The Complaint alleges that outputs "replicate or closely simulate the distinctive vocal characteristics of Plaintiffs." (Dkt. 1 ¶ 214; *see id.* ¶¶ 9, 81, 142, 197.) The distinction the Reply calls decisive is not in this case.

The Reply's effort to extend the First Amendment bar to Counts VI through IX rests on a misreading of the Opposition. The Reply says the Opposition concedes that those counts "rest not on an antecedent act, but on the models' public availability and outputs." (Dkt. 32 at 19.) It does not. Counts VI, VII, and IX plead the antecedent act: Google's "extracting and modeling" of Plaintiffs' vocal characteristics and its "collection and commercial exploitation of the biometric identifiers of Illinois persons without their knowledge or consent." (Dkt. 1 ¶¶ 195, 205, 218–24.) What the Opposition said about the output-based theories is that they "turn on particular generated works," so their First Amendment status is a work-specific question that cannot be resolved on the pleadings. (Dkt. 31 at 23, 25–27.)

**Conclusion**

Nothing in the Reply warrants dismissal. The motion should be denied. If the Court dismisses any claim, the dismissal should be without prejudice. The Reply still asks for dismissal of an original complaint with prejudice, without arguing futility. (Dkt. 32 at 20; Dkt. 31 at 30.)

Dated: October 1, 2026

Respectfully submitted,

LOEVY & LOEVY

/s/ Ross Kimbarovsky

Ross Kimbarovsky (6229590)
ross@loevy.com
Jon Loevy (6218524)
jon@loevy.com
Michael Kanovitz (6275233)
mike@loevy.com
Matthew Topic (6290923)
matt@loevy.com
Aaron Tucek (98624)
aaron@loevy.com
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312.243.5900 (phone)
312.243.5902ax)

*Attorneys for Plaintiffs Carol Marin, Philip Rogers, Alison Flowers, Robin Amer, Lindsey Dorcus, Yohance Lacour, and Victoria Nassif.*